GENERAL ELECTRIC CO. v. CHATTANOOGA COAL & IRON CORP.

(Circuit Court of Appeals, Sixth Circuit.   April 6, 1917.)

No. 2902.

1. APPEAL AND ERROR ☜1010(1)—REVIEW—REFUSAL TO DIRECT VERDICT—
    CONSTRUCTION OF CONTRACT.
        The Circuit Court of Appeals cannot review the trial court's construc-
    tion of a contract, the language of which was so general and obscure as
    to make parol evidence as to its meaning competent, where there was
    testimony to sustain the construction.
        [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–
    3981.]

2. SALES ☜181(11)—EVIDENCE—WAIVER OF DELAY IN PERFORMANCE.
        In an action for damages caused by the purchaser's refusal to accept
    a machine, which the contract required to be shipped on a certain date,
    evidence *held* to warrant the jury in finding that defendant had not un-
    conditionally waived the requirement of the contract as to time for
    shipment, but had merely agreed to accept shipment at a later date, so
    that defendant could refuse to accept when the shipment was not made
    on that date.
        [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 486, 487, 490.]

3. SALES ☜81(3)—TIME FOR PERFORMANCE—ESSENCE OF CONTRACT.
        Where defendant had ordered a blower for its engine, and notified
    plaintiff that it was necessary to have the blower as soon as possible to
    safeguard defendant from damage in case of accident to his other
    blowers, the time for performance was of the essence of the contract.
        [Ed. Note.—For other cases, see Sales, Cent. Dig. § 219.]

4. SALES ☜170—TIME FOR PERFORMANCE—EXTENSION OF TIME.
        Where a defendant intended to extend indefinitely the time of per-
    formance of the contract, and to rely on plaintiff's responsibility for
    such damages as he might suffer in the meantime, plaintiff can recover
    after delivery within a reasonable time; but, if there was merely a suc-
    cession of extensions to definite dates, plaintiff cannot recover, where he
    did not deliver on the date fixed by the last extension.
        [Ed. Note.—For other cases, see Sales, Cent. Dig. § 424.]

5. SALES ☜176(3)—TIME FOR PERFORMANCE—WAIVER—NOTICE OF LIABILITY.
        Notice that defendant would hold plaintiff liable for damages result-
    ing from delay in shipping the machine ordered does not as a matter of
    law amount to an indefinite waiver of time for performance, and a sub-
    stitution of plaintiff's liability for breach.
        [Ed. Note.—For other cases, see Sales, Cent. Dig. § 439.]

6. SALES ☜181(11)—TIME OF PERFORMANCE—WAIVER—UNDISPUTED TESTI-
    MONY.
        The testimony of a seller's agent that defendant had waived the re-
    quirement for performance by a definite time, though not in terms dis-
    puted, is not conclusive, especially where he referred to defendant's let-
    ters as also indicating waiver, and the letters did not show waiver.
        [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 486, 487, 490.]

7. SALES ☜170—REFUSAL TO ACCEPT DELAY IN SHIPMENT—MOTIVE FOR RE-
    FUSAL.
        Where the purchaser of a machine had a legal right to refuse to ac-
    cept it, because of the delay in shipping it, he can exercise that right,
    though his motive in doing so was the necessity for shutting down his
    plant.
        [Ed. Note.—For other cases, see Sales, Cent. Dig. § 424.]

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action by the General Electric Company against the Chattanooga Coal & Iron Corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

Frank Spurlock, of Chattanooga, Tenn., for plaintiff in error.

J. B. Sizer, of Chattanooga, Tenn., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and EVANS, District Judge.

KNAPPEN, Circuit Judge. The General Electric Company sued the Chattanooga Coal & Iron Corporation for the purchase price of a turbo-compressor, or blowing engine, manufactured by plaintiff for use in connection with defendant's blast furnace, under contract between plaintiff and the receiver of defendant's predecessor corporation, which contract defendant assumed. Defendant refused to accept the machine, because not completed within the time contracted for. By agreement between the parties, plaintiff sold the machine, realizing $4,000 less than its contract price, and for this sum recovery was asked.

At the conclusion of the testimony defendant moved for directed verdict in its favor, which was refused, and the case submitted to the jury under a charge to which no exception was taken. As construed by the court, the original contract provided for the delivery of the completed machine f. o. b. Lynn, Mass., on or before January 15, 1913. The machine was not actually ready for shipment until April 28th following, and was never shipped; defendant having refused to receive it. By the charge the verdict was made to turn upon questions relating to alleged waiver by defendant of the time of completion and shipment and reasonable time for performance. There was verdict for defendant, on which judgment was entered. The errors assigned relate only to the refusal to direct verdict and the denial of a motion for new trial, which, so far as reviewable, raises no questions except those involved in the refusal to direct verdict.

[1] Plaintiff contends that the machine was completed and ready to ship within the period provided therefor by the original contract, which was finally accepted July 1, 1912, and required shipment to be made within 6½ months from the receipt of complete instructions. The contract provided that:

"In case of delay by the purchaser, shipment shall be extended for a reasonable time, based on period of purchaser's delay and conditions at the factories of the company."

And plaintiff claims that it was not until November 12, 1912, that it received from defendant the complete instructions necessary for building the blower. If this is so, it ends the defense, for plaintiff was ready to ship within 6½ months from that time. But we cannot review the court's conclusion in this regard because of defendant's testimony, which was competent in view of the general and obscure language of the written contract, that there were in fact no instruc-

tions necessary for defendant to give in order to enable plaintiff to build the blower. There was nothing unreasonable about this testimony, which presented at least a question of fact, the court's instruction regarding which cannot be reviewed under motion to direct verdict. Indeed, we cannot say that the trial court was not justified in concluding, as he did, in a charge unexcepted to, that:

"The evidence as to the way in which this contract has been construed by the parties, shown by their correspondence, the testimony of the witnesses, and otherwise, leaves it undisputed that the parties understood that the machine was to be shipped on or before January 15, 1913, 6½ months after the contract was finally approved by the plaintiff."

[2] Assuming, then, as we must, that under the original contract shipment was to be made by January 15th, plaintiff cannot recover unless it has sustained the burden of proving a waiver by defendant of the time stipulated for performance. It appeared that defendant had four blowers, three of which it kept in use, the fourth being in reserve to take the place of a disabled blower; that the blower in question was ordered to take the place of this reserve machine, which was dismantled when the contract was made in order to make way for the new installation. It appeared by the correspondence that on June 26, 1912, after the purchaser had signed the order, but before its ultimate acceptance by plaintiff, the former called plaintiff's attention to the condition just stated, and impressed upon plaintiff the importance of the earliest possible delivery, saying, "If anything should happen to either one of the three [blowers], you can understand what a fix we would be in, and which may cost us untold damage, to say nothing of the interference with our business," adding that the order was given "with the understanding that you would lose no time whatever in getting out this engine, and to leave nothing undone to get the machine to us at the earliest possible moment." On August 21st plaintiff notified defendant that it expected to have its drawings completed for submission by the first week in September, and promised biweekly reports of progress made, on September 17th wrote that "every endeavor is being made to anticipate estimated shipment of January 15th," and on November 2d advised defendant that it "expected to meet the shipping date of January 15, 1913."

Defendant, having meanwhile heard nothing further, on December 3d urged completion and shipment, again calling attention to the lack of reserve blower and saying that should there be delay in the installation of the new machine, "and one of our present engines break down, we will look to your company for reimbursement to cover loss in output or profit in difference in tonnage, whichever way you wish to put it." On the next day, apparently before plaintiff's receipt of the letter just referred to, defendant was notified that, "due to delay in drawings and congestion in shop, shipment of your turbo-blower will be delayed until March 1st," to which, on December 5th, defendant replied, protesting and expressing surprise, saying:

"This is not at all satisfactory to us, for, as previously explained to you, we have no surplus blowing power, and, should one of our engines break down, our output would be greatly reduced. When we placed the order with your company, it was with the assurance that delivery would be made

not later than the middle of January, and we have made our arrangements accordingly. We therefore insist that you stand by delivery promised. Handle this matter vigorously with your home office and advise us further on the subject, as we expect you to protect us in the event we have a breakdown."

Seven days later defendant was advised that plaintiff could not ship before March 1st. On January 3d defendant again asked for report of progress made, and on the same day (apparently before the letter just mentioned was received) plaintiff wrote defendant that:

"Due to both suction and discharge heads being scrapped, we will not be able to make shipment before March 15th."

On February 14th defendant was notified that delivery might be again delayed beyond March 15th, on account of certain defective castings; on March 3d that, "owing to the loss of the two diaphragms," the machine could not be tested before March 25th, adding that "unforeseen troubles have continually developed, but I trust this is the last one"; and on March 21st wrote that the equipment was being assembled for test, which it was thought would begin by March 31st, and if satisfactory, and no changes required, shipment might be made by April 15th. On April 16th defendant was again notified that shipment was expected to be made on April 18th. Defendant, having meanwhile received no notice that the machine was shipped, on April 23d or 24th inquired of plaintiff whether shipment had been made, and on the 25th was advised that it had not yet been shipped, but that shipment would be made on April 30th. Defendant then notified plaintiff not to ship the machine and that it canceled the contract.

[3] We think it clear that time was of the essence of the original contract. Plaintiff contends, however, that it conclusively appears that defendant made a general waiver of performance within the time provided by the original contract, and, this being so, could not rescind without first notifying plaintiff to perform and giving a reasonable and specified time therefor.

In our opinion the broad proposition that, in every case where performance on the exact date fixed by an executory contract has once been waived, neither party can rescind on account of delay, without first giving notice requiring performance within a reasonable time specified, is not fortified by authority. In Taylor v. Goelet, 208 N. Y. 253, 258, 101 N. E. 867, Ann. Cas. 1914D, 284, general language, perhaps susceptible of such import, is used. But the facts of that case and the point in issue do not call for it, and we are cited to and have found no authorities sustaining it as applied to the facts before us.

The distinctive features of this case, at least according to the tendency of the evidence, are that time was of the essence of the original contract; that the time of performance has not been postponed because of defendant's further requirements or in its interest or at its request; that the delay was against both its interest and its protest; that it has had neither possession nor benefit of the machine, and thus is not liable on a quantum meruit; and that the question presented is merely one of right to rescind, as raised in an action at law. The clause "whichever way you wish to put it," in the letter of December

3d, plainly refers only to the two methods of expression immediately preceding.

[4] We agree with the learned District Judge that if defendant intended to extend indefinitely the time of performance, and to rely upon plaintiff's responsibility for such damages as defendant might suffer from the delay, and if plaintiff was justified in so understanding, it was entitled to recover, provided a delivery on April 30th was within a reasonable time, taking into account the entire history of the transaction, but that if, on the other hand, as defendant contends was the case, there had been merely a succession of extensions of time for delivery to definite dates, the last definite date being April 18th, plaintiff was not entitled to recover. It follows that if there was substantial testimony tending to show that the time of delivery had been extended merely for definite periods and to definite dates, and that the last definite date was April 18th, the motion to direct verdict was properly denied.

Were the letters of June 26th and November 2d alone to be taken into account, it would perhaps be difficult to avoid the conclusion that defendant had intended to extend indefinitely the time of performance, relying upon plaintiff's responsibility for such damages as defendant might suffer from the delay, and that there had been not merely a succession of extensions of time of delivery to definite dates; but both these letters were written previous to any notification that delivery would be postponed beyond January 15th, and in the letter of December 5th, which was the first letter written after notice that delivery would not be made according to the contract, defendant, while insisting that it would expect to be protected in the event of breakdown, yet also insisted that delivery be made by the previously agreed date, and we find nothing in the correspondence subsequent to that time referring to the question of protection, or consenting, unless by silence alone, to further delay in shipment.

[5] Indeed, the record contains no letter from defendant to plaintiff after February 8th until the letter of rescission of April 25th, and the testimony seems undisputed that "the correspondence has all been substantially filed." Furthermore, after the notification to defendant that shipment was expected to be made on April 18th, no notice was given that it would not be so made until subsequent to that date, nor was any later date suggested until after defendant's inquiry of April 23d or 24th, whether shipment had already been (not when it would be) made. It is true that the notice that defendant would hold plaintiff liable for damages occasioned by a breakdown tended to make plaintiff liable to recovery therefor on failure to perform (Northwestern, etc., Mfg. Co. v. Gt. Lakes Eng. Works [C. C. A. 8] 181 Fed. 38, 43, 104 C. C. A. 52); but it did not, as matter of law, necessarily and standing alone, amount to an indefinite waiver of time of performance, and to a consent to a substitution of plaintiff's liability for breach in place of agreement to perform.

[6] Nor do we think the testimony of plaintiff's Chattanooga representative, although not in terms disputed, conclusive upon the proposition that defendant had continued up to April 28th to urge delivery,

and so, as matter of law, negativing an extension to April 18th only. We think the jury not bound to accept this statement, especially in view of the reference by the witness to defendant's letters as indicating, or as also indicating, such insistence. While the question is not free from difficulty, we think, upon a consideration of the entire record, it was open to the jury to find as a fact that there had been no extension of time beyond April 18th. The motion to direct verdict was thus properly denied. Plaintiff was therefore not prejudiced by a submission to the jury of any and all of the questions of fact submitted.

[7] The fact that defendant was moved at the last to rescind the contract because the condition of the iron market made it necessary to shut down the plant is not conclusive against its right to rescind. If the right otherwise existed, it was not lost because of defendant's reason or motive for insisting upon its right.

Being of opinion that the motion to direct verdict was not well taken, the judgment of the District Court is affirmed.