GILL et al. v. HALE & KILBURN CO.

(Circuit Court of Appeals, Sixth Circuit. January 10, 1919.)

No. 3166.

1. CONTRACTS �köm261(5)—RESCISSION—AUTHORITY OF PARTIES.

If time was of the essence of plaintiff's subcontract to install the metal doors in a building, etc., so far as concerns plaintiff's right, as distinguished from its obligation, to complete its work by a certain date, and defendants, the general contractors, did not have the building ready for installation of the doors at the time fixed for completion of the subcontract, plaintiff had the right to cancel such contract at the expiration of that date.

2. TRIAL ⊙═136(1)—PROVINCE OF COURT AND JURY—REASONABLE TIME.

It is a general rule that questions of reasonable time and reasonable delay are for the jury.

3. PRINCIPAL AND AGENT ⊙═177(3)—NOTICE TO AGENT.

Where plaintiff's representatives consulted with defendant contractor as to details of the subcontract which plaintiff had undertaken, information and knowledge so acquired by such representatives as to progress of defendant's work was that of plaintiff.

4. CONTRACTS ⊙═323(3)—CONSTRUCTION—TIME.

Where the general contractors were required to complete within a specified time, and they let a subcontract for the metal doors, etc., to be completed October 1, time was not of the essence of the contract, so far as concerned the subcontractor's right, as distinct from its obligation, and so the fact that the general contractor was unavoidably delayed, and did not have the building far enough advanced for the doors to be installed at the time fixed for completion of that work, did not, as a matter of law, warrant the subcontractor in canceling its contract.

5. CONTRACTS ⊙═323(3)—CONSTRUCTION—REASONABLE TIME.

Whether the delay of the general contractor in completing the building to such a point as would allow subcontractor to install metal doors, etc.,

---

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

before expiration of the time for completion of the subcontract, was so unreasonable as to warrant the subcontractor in canceling its contract, *held*, under the evidence, for the jury.

6. CONTRACTS ⊂⊃323(3)—QUESTION FOR JURY.

In subcontractor's action against contractor for damages for failing to permit plaintiff to perform prior to time when plaintiff's contract was to be completed, whether plaintiff had waived, or by its conduct was estopped to urge, defendant's failure to permit plaintiff to perform, *held* for the jury.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by the Hale & Kilburn Company against John T. Gill and Kermode F. Gill, copartners doing business under the name of John Gill & Sons, who counterclaimed. There was a judgment for plaintiff, the counterclaim being dismissed, and defendants bring error. Reversed and remanded, with directions.

W. C. Boyle, of Cleveland, Ohio, for plaintiffs in error.

Merle N. Poe and Ralph Burroughs, both of Cleveland, Ohio, for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and KILLITS, District Judge.

KNAPPEN, Circuit Judge. Plaintiffs in error, whom we style defendants, had a contract for altering and extending a building in Cleveland, Ohio, which was to be completed January 1, 1916. In April, 1915, they made a subcontract with defendant in error (the plaintiff), whereby the latter agreed, for a stated price, to furnish and install the metal doors and trim, picture molding, and base, and to apply the hardware, such installation to be completed by October 1, 1915. On October 16, 1915, the building had not progressed far enough to permit plaintiff to begin its work, and on that date plaintiff gave defendants notice of its rescission of the contract, and brought this suit for the recovery of damages sustained by defendants' failure to permit plaintiff to perform. Defendants denied plaintiffs' right to rescind, and asked for damages by way of counterclaim for plaintiff's refusal to perform. The jury was instructed that under the undisputed testimony plaintiff had the right to refuse to go on with its contract, that defendants had thus no right of action under their counterclaim, and that plaintiff, if not then itself in default, was entitled to recover its damages. Plaintiff recovered verdict and judgment for $7,500. This proceeding is brought to review that judgment.

[1-6] 1. The question of prime importance is whether the court rightly held, as matter of law, that plaintiff had a right to rescind on October 16th. Defendants' construction was delayed several months by controversies with the city over questions arising under its building code relating to the height of the building and structural strength, by the unforeseen necessity of deeper foundations, the encountering of

quicksand and otherwise, all resulting in defendants' losing their order of priority with the steel manufacturers. For these delays plaintiff was in no way at fault. Its actual installation could not begin until the building was ready for the "bucks," which are heavy steel frames outlining the openings and into which the tile partitions enter, and which thus support the metal work. The bucks could not be put in until the lower floors were laid, and from one to three months thereafter would be required (according as the claims of plaintiff or defendants are accepted) for completing plaintiff's work.

On July 13, 1915, defendants replied to plaintiff's inquiry that—

"We expect the steel work to go right ahead now, and in all probability will not require the steel bucks before September or October, and will advise you later on when we receive the steel drawings and give you outlines as to dates of delivery."

On September 7th defendants replied to like inquiry:

"We expect to have the steel for approximately up to the third floor shipped and erected by the end of next month, and as soon as they start on the upper portion the tile floors will follow right along."

In the latter part of September plaintiff learned definitely that the building would not be ready in October for its installation, and it thereupon gave, on October 16th, its notice of rescission. As it turned out, the building was not ready for the bucks before December. It is enough, for present purposes, to say that it must be, and it is, conceded that as the result of the correspondence and dealings between the parties plaintiff waived whatever right it had, to complete the contract by October 1st.

Had time been of the essence of the contract, so far as concerns plaintiff's right (as distinguished from its obligation) to complete its work by October 1st, and had the waiver been for a definite period or to a definite date, plaintiff would have had the absolute right to cancel at the expiration of that date. General Elec. Co. v. Chattanooga Co. (C. C. A. 6) 241 Fed. 38, 42, 154 C. C. A. 38. But, in our opinion, neither of these conditions existed. The contract did not in terms make time of its essence, so far as concerns the plaintiff's right to complete by October 1st. Such was the implied effect as to its obligation. But the obligatory provision was for defendants' benefit. The reason for a difference between the rights of the parties in this respect is clear. Defendants were under contract with the owner to complete by January 1, 1916, with stipulation for damages at $100 per day for delay. The fact that the delay occurred through the fault of the subcontractor would not avoid defendants' liability. Plaintiff accordingly agreed to like stipulated damages in case of its delay, but for delays not occurring through its fault it would not be liable. The contract, moreover, expressly provided for a suspension from time to time of such parts of the work as defendants should require, and for a resumption of performance thereafter according to defendants' direction, no claim therefor to be made other than an extension of time for completion equivalent to the delay involved. It was also provided that plaintiff's work should be performed and completed as soon as the progress of the build-

ing should permit, "and at such times and places and in such quantities as may be directed by [defendants]." The only other express requirement as to the time of commencement of plaintiff's work is that the "steel bucks for doors shall precede, and metal grounds for base and picture molding will immediately follow, the erection of the tile partitions."

Moreover, the defendants had not in terms promised that the building would be ready for plaintiff by October 1st. At the most they had said (on July 13th) that it would not be ready before September or October, with promise of further advice, and (on September 7th) in effect that it was expected that the steel erection would by the last of October have proceeded far enough to permit the commencement of plaintiff's installation. However, the suspension and other provisions just referred to gave defendants no right arbitrarily or unreasonably to suspend the work. And, as the case shaped itself, the controlling question on this branch of the case is whether the court rightly held, as matter of law, that, under the circumstances mentioned, a delay by which plaintiff would be prevented from beginning work until December or later was an unreasonable delay, which would justify plaintiff in canceling the contract. If so, we are not prepared to say that the notice was invalid because stating, as ground for rescission, that there had been no extension of time for completion beyond October 1st.

We think that, upon this record, the peremptory instruction as to unreasonable delay was erroneous. It is the general rule that questions of reasonable time and reasonable delay are for the jury. The only exception is where the facts are not in dispute and where there is no room for differing inferences. International Co. v. Stadler (C. C. A. 6) 212 Fed. 378, 382, 129 C. C. A. 54; Marmet Co. v. Peoples Co. (C. C. A. 6) 226 Fed. 646, 651, 141 C. C. A. 402. Such is not the case here. The evidence was not in complete harmony. There was testimony (considering it, as we must, most favorably to defendants) tending to show that plaintiff was kept acquainted with the progress of defendants' work and had the means of knowing with reasonable accuracy what the prospects were from time to time. Notwithstanding the delays, it was in frequent conference with defendants throughout the summer regarding the progress of the work. Its representatives visited Cleveland as often as once a month until October; one of them consulting with defendants about details left open by the contract, at least one of which details was never settled. These representatives were to that extent plaintiff's agents, and their knowledge and information thus acquired was that of plaintiff. G. R. & I. Ry. Co. v. United States (C. C. A. 6) 212 Fed. 577, 583, 129 C. C. A. 113.

After the letter of September 7th, which stated defendants' expectation that the work would by the last of October have progressed far enough for the beginning of plaintiff's installation, it kept on with its preparations without intimating any intention to discontinue. As late as September 22d it wrote defendants regarding proposed "extra" partitions. On September 18th to 22d plaintiff's engineer consulted with defendants at Cleveland regarding the details of plaintiff's work,

reporting to plaintiff the results thereof, and on October 1st plaintiff wrote defendants referring to this visit of its engineer and confirming "certain information received and constructions decided upon" during the engineer's visit. The matters so formally confirmed included a checking of the quantities of certain openings, some of which were to be of special construction, "to be decided upon later by the architect," who had approved a schedule prepared for each of certain lower floor additions, accompanied by plaintiff's statement that "it is our understanding we are to proceed with this additional material," and asking to be immediately advised if its understanding was incorrect. Among other enumerations were special doors and their method of construction, with promise to "shortly send drawings of the sliding doors of this type in the basement for approval of sizes." It also asked whether a sketch which the architects were preparing of certain partition lights would "be ready shortly." There was also a request that the hardware schedule be promptly forwarded, with promise that the matter of finish "will be covered in a separate letter," and for the early submission of drawing for special closets. Reference was made to several other matters of a similar nature, followed by an express request for acknowledgment of the receipt of plaintiff's letter, "so that we may be sure all matters are understood between us."

It is because of the engineer's report of his visit referred to in the letter of October 1st, as to the then condition of the building, that the notice of rescission was given 15 days later. The letter of October 1st contained no reference to this subject, nor did plaintiff from the time of its engineer's visit in September until its cancellation letter of October 16th disclose to defendants any intention of rescinding the contract. After October 1st plaintiff wrote three letters, one acknowledging receipt from defendants of certain drawings, another asking for certain instructions from the architect, and the third to the hardware men, relative to certain doors and transoms. Plaintiff's fabrication of metal work continued up to October 16th, although the information conveyed in defendants' letter of July 13th, considered in connection with plaintiff's letter of August 30th, showed that plaintiff's installation could not be completed by October 1st. One item of the fabrication seems to have gone through the shops on October 29th.

What is reasonable time depends on a consideration of all the circumstances of the particular case. Without intimating any opinion upon the merits, and without setting out the testimony more at large or in detail, it seems enough to say that we think there was substantial evidence tending to support a conclusion that defendants were justified in relying upon an apparent intention on plaintiff's part to continue under the contract, and that a further delay of two or three months beyond October 1st would not be, under all the circumstances, unreasonable. The testimony thus presented a question of fact for the jury. The question whether plaintiff would have been entitled to damages for the delay, had it completed its contract, is not involved.

2. It follows from what we have said that the defenses of waiver and estoppel should have been submitted under appropriate instruc-

tions, and that, if the jury should determine that plaintiff was not entitled to rescind, the subject of counterclaim would remain in the case.

The judgment of the District Court is reversed, and the record remanded, with directions to award a new trial.