DAVIS-WATKINS DAIRYMEN'S MANUFACTURING COMPANY,
    Respondent, vs. CRONIN DAIRY & ICE CREAM COM-
    PANY, Appellant.

*January 15—February 10, 1925.*

*Sales: Milk bottles specially marked: Immediate delivery: Burden
    of proof: Substantial compliance.*

1. Where a sale of specially marked milk bottles on August 2,
   1920, was for immediate shipment, and the seller, under
   sub. (2), sec. 121.43, Stats., was bound to fill the order within
   a reasonable time (which undisputed evidence showed at the
   outside was six weeks), the seller was in default on Febru-
   ary 23, 1921, and the buyer could cancel the order and relieve
   itself of the obligation to receive the goods. p. 112.
2. The order calling for immediate delivery, the burden was on
   the seller to show substantial performance of the contract by
   delivery or shipment within a reasonable time. p. 112.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Reversed.*

August 3, 1920, defendant signed one of plaintiff's printed order forms calling for the shipment to defendant as soon as convenient of certain supplies f. o. b. point of shipment, terms one per cent. ten days, or net thirty days from date of seller's invoice.

The order provided for several different kinds of bottles and dairy supplies. As to some of the items there was a notation, "Rush from stock," and as to twenty barrels of caps some were to be shipped at once, the remainder thereof three barrels every ninety days. Shipments were made on account of such order in August and the five following months.

The items involved in this suit were specified as fifty gross of pint bottles at $9.25 per gross, and five gross quarter-pints at $6.75 per gross, all to have defendant's name pressed or printed in the glass. It is treated as a conceded fact that so much of the order was to be manufactured for plaintiff by special order at some glass factory.

Nothing was said or done between the parties with reference to this particular part of the order until plaintiff's letter of December 23, 1920, with an evident reference to this particular order and then stating, "At the time your order was placed the bottle situation was such that it was impossible to receive delivery from the manufacturer; however, we have just received a letter from them stating that all of these shipments will be taken care of at an early date. Trusting that under the conditions this is satisfactory," etc. This letter was not replied to by defendant. Again nothing passed between the parties as to this until defendant's letter of February 22, 1921 (in evident response to a dunning letter from plaintiff not in the record), and which closed as follows: "You may cancel any orders you have on file for us." This was answered by plaintiff February 23d, saying among other things: "We are sorry we cannot comply with

your request to cancel any orders which we may have on file from you. These orders are booked with the factories and are in process of work. . . . If you wish to take the stand that you do not care to do further business with us because we insist on having our bills paid, we shall be very sorry; but the fact remains that when an order is placed with us and work is started upon it, it cannot be canceled simply by writing a letter so advising, and that our bills must be paid at maturity."

March 2d a shipment was made from the glass factory of sixty-one crates of glass bottles to defendant, arriving at Janesville apparently on March 9th. Defendant then and thereafter refused to accept delivery of the crates and they were held for some time at Janesville subject to demurrage, and on April 15th, on order of the plaintiff, returned. The shipment contained several gross more of each of the pints and quarter-pints than specified in the order of August 2d, but this was recognized by defendant as in attempted compliance with said order.

Considerable correspondence was had between the parties with reference to the situation, and defendant, on March 18th, in reply to a letter of the 17th which suggested the sending of a draft for the then account which included other items than the one here in suit, said: "We wish to say that we will take care of this just as soon as possible. These bottles were ordered June, 1920 [evidently mistaken reference to the August order], and shipment was made in February, 1921, nearly seven months later. As you know, we were compelled to buy bottles elsewhere to carry us those six months and consequently we are overstocked now. We will pay for these bottles when we begin using them, which will be shortly. Trusting our action will be satisfactory to you," etc. March 30th defendant sent $150 on account for other items. April 11th plaintiff's representative called on defendant and an arrangement was made subject to plaintiff's approval. Defendant's understanding of it was em-

bodied in a letter to plaintiff referring to such arrangement
and stating a willingness to accept the shipment of March 2d
of the sixty-one crates here involved and of five other crates
shipped February 4th but not here involved, saying, "pro-
vided you have the storage charges of $104.88 [then claimed
on account of this particular shipment] and $8.28 respec-
tively canceled. We will make payments as follows: June 1st
$38.75 and $145.21; July 1st $200, and August 1st $200.
Hoping this arrangement is satisfactory to you we remain,"
etc. This was answered by plaintiff April 16th refusing to
cancel the demurrage charges and demanding that the de-
fendant pay them; reciting the having of a *bona fide* order
from defendant and that these bottles are entirely special
with defendant's name on them and of very little value to
plaintiff; that it cannot see any other way out of it than to
have defendant pay, and that to eliminate the accruing of
further charges the railroad company had been instructed
to return the bottles to plaintiff to be held for defendant's
disposal. Demand was made for a check for the demur-
rage charges and then the payments and notes as outlined
in the foregoing letter, stating, also, that unless immediate
action is taken by defendant the account would be turned
over for collection. This final proposition was not com-
plied with by defendant, and after further correspondence
an action was commenced June 30, 1921, in the municipal
court of Janesville. The complaint made no reference to the
order of August 2, 1920, *supra,* but alleged a sale and de-
livery on March 2, 1921, of the increased number of the re-
spective sized bottles as contained in the sixty-one crates as
of the agreed price and reasonable value of $545.21 and as
due April 2, 1921. It alleged refusal by defendant to re-
ceive the shipment, and that freight and demurrage paid by
plaintiff on said shipment amounted to $214.22, and for the
total of such items, together with interest, judgment was
demanded.

Defendant answered by general denial. Testimony was

taken in the municipal court and judgment for defendant. Plaintiff appealed to the circuit court, and thereafter, a jury being waived, and upon the evidence taken in the municipal court, the circuit court made his findings and directed a judgment for plaintiff for the contract price of the bottles, together with one half of the freight and demurrage, namely $107.11, together with interest and costs. From the judgment defendant has appealed.

For the appellant there was a brief by *Nolan, Dougherty & Grubb* of Janesville, and oral argument by *Paul N. Grubb*.

For the respondent the cause was submitted on the brief of *Richardson & Dunwiddie* of Janesville.

Eschweiler, J. Upon the trial plaintiff offered no evidence tending to excuse the delay from August 2, 1920, to March 2, 1921, for the shipment of the special order of bottles under the contract of August 2d and which were by its terms to be for immediate shipment. One of defendant's officers and the only witness on the trial testified that the customary period for the making and delivery of such glass lettered bottles was from thirty days to six weeks, and on cross-examination by plaintiff's counsel testified that orders for such goods for immediate shipment meant within six weeks at the latest. Plaintiff offered no evidence as to when the order was placed by it for this particular lot; the necessary length of time it would take to manufacture; or whether or not this particular order was, as a matter of fact, manufactured or in process of manufacture at the time that plaintiff received notice of cancellation of all orders by the letter of February 23d, *supra;* the mere recitals in plaintiff's letters of December 23d and February 23d, *supra,* not being, of course, proper evidence of the existence of the alleged facts recited in such correspondence.

Although the complaint referred to a sale and delivery on March 2, 1921, the date of shipment, nevertheless such sale must be based upon the written accepted order of August 2,

1920, under the Uniform Sales Act, sub. 2, sec. 1684*t*—4, Stats. 1919, now sec. 121.04, Stats.

So much of that contract as is here concerned clearly contemplated things not then in existence and was therefore for articles within the definition of "future goods" under the Uniform Sales Act, sec. 1684*t*—5, Laws 1919, now sec. 121.05. There is no evidence to support a conclusion that there was prior to the shipment any such unconditional appropriation of the bottles to the contract by either party sufficient to pass title thereto under then sub. 1, sec. 1684*t*—4, now sec. 121.19 (4) (a), prior to the cancellation order of February 22d.

It is apparent, therefore, that so far as any right of action by plaintiff can be properly asserted on the basis of an alleged completed contract of sale and consequent liability by the defendant for the purchase price, it must be determined by the situation as presented on March 2d, the time of the delivery of the goods to the railroad company, and the time asserted in the complaint.

By the written contract of August 2d these bottles were for immediate shipment. Such an express provision can be no less stringent as a condition binding the seller to promptly deliver than would follow under the Uniform Sales Act were the contract silent in such respect, and by sub. 2, sec. 1684*t*—43, Stats. 1919, now sub. (2), sec. 121.43, the seller is bound to send such goods within a reasonable time. Under the uncontradicted testimony a reasonable and customary period within which such articles should be shipped after the time of contract was at the outside six weeks. The plaintiff's letter of December 23d, *supra,* admitting that the articles were not then ready to be delivered pursuant to the contract, was written at a time long after the period within which, under the contract, statute, and testimony, the goods should have been shipped. Conceding for present purposes that the silence of defendant after its receipt of the December 23d letter was a waiver of the then delay, never-

112    SUPREME COURT OF WISCONSIN.    [Feb.

Davis-Watkins D. M. Co. v. Cronin D. & I. C. Co. 186 Wis. 106.

theless the plaintiff would be bound under the law to have the goods sent within a reasonable time thereafter. This the plaintiff did not do, under the uncontradicted testimony, and was clearly in default on its part at the time it received the written notice of cancellation on February 23d. Furthermore, there is no evidence that at such time even the articles were in process of manufacture, and besides, for all the record discloses, the manufacture and preparation for shipment may have all been done after February 23d.

The defendant, therefore, had the right on February 22d to cancel the order as it did so far as relieving itself of any further obligation to receive the goods or pay the contract purchase price.

The plaintiff here had the burden of showing under the contract of August 2d substantial performance by delivery or shipment within a reasonable time, and it failed to meet such burden and offered no evidence which establishes a legal excuse for such delay.

The plaintiff therefore failed to establish a cause of action for the purchase price of the goods or the demurrage paid by it upon the same, and the complaint should have been dismissed. *Howard & Foster Co. v. Cummins,* 179 Wis. 354, 191 N. W. 501. The subsequent transactions between the parties amounted to no more than negotiations for a settlement of the matter between them and there was no meeting of the minds on any definite proposition in that regard.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.