SHY, Respondent, vs. INDUSTRIAL SALVAGE MATERIAL COMPANY, Appellant.

*April 3—May 5, 1953.*

For the appellant there was a brief by *Hersh & Magidson,* attorneys, and *Frederick Hersh* of counsel, all of Milwaukee, and oral argument by *Frederick Hersh* and *Arthur B. Magidson.*

For the respondent there was a brief by *Zillmer & Redford,* and oral argument by *Robert J. Davison* and by *John M. Redford,* all of Milwaukee.

FRITZ, C. J.   On a trial in the civil court of Milwaukee county, Judge HERBERT SCHULTZ found that the defendant, Industrial Salvage Material Company, had agreed with the plaintiff, Casimir Shy, during the week of May 15, 1950, to purchase and pick up from the plaintiff 13,600 pounds of iron rods for the agreed price of $408, and to pay for said rods on the day that defendant picked them up. After frequent requests by plaintiff, defendant picked up and took the rods on about June 21, 1950, but defendant did not pay for them on said date and has not paid to plaintiff any part of said price of $408, although plaintiff has repeatedly requested payment from defendant.

Defendant's answer admits the delivery of said iron rods to. defendant, and that it agreed to pay said price of $408 to plaintiff; but alleges by way of counterclaim that plaintiff's claim is subject to a setoff and counterclaim in the amount of $1,540. Defendant admits that on May 15, 1950, said parties entered into a contract whereby plaintiff agreed to

sell and the defendant agreed to buy said 13,600 pounds of iron rods at 3 cents a pound. Defendant contends, however, that at the time of purchasing the iron rods, plaintiff agreed to sell to defendant 14,000 pounds of aluminum strips at 14 cents a pound; that defendant has performed all terms and conditions of said contract to be performed, but that the plaintiff failed, refused, and neglected to perform his part of the contract, by failing to sell and deliver said 14,000 pounds of aluminum to defendant, who has been and now is ready, willing, and able to pay the agreed purchase price for said iron rods and aluminum strips upon completion of plaintiff's performance. Defendant claims to be damaged by reason of plaintiff's failure to perform said contract in the amount of $1,540, with a recognized offset of $408, thereby leaving a judgment to be recovered by defendant in the amount of $1,132 in favor of defendant.

Plaintiff's answer to defendant's counterclaim admits that the parties had entered into a contract whereby the plaintiff agreed to sell and defendant agreed to buy certain strips of aluminum at 14 cents a pound, but denies that the weight of said strips was 14,000 pounds, and alleges that said strips weighed 10,000 pounds. Plaintiff further alleges that said contract also provided that defendant was to pay said price for said metal within a few days of the time of the making of the contract, and that defendant breached the contract by refusing to pay for the aluminum at the time specified. It is plaintiff's contention then, that time was of the essence of the contract, because the price of aluminum fluctuated rapidly at short intervals of time. Plaintiff therefore moved for judgment and asked that the counterclaim be dismissed.

On the trial in the civil court, Judge SCHULTZ found:

"That the defendant by its agent, Louis Arnovitz, agreed to buy from plaintiff, and plaintiff agreed to sell to defendant said 13,600 pounds of iron rods at a total price of $408; and that defendant agreed to pick up said iron rods within

a week after the date of said agreement and to pay for said iron rods when picked up; that defendant, after frequent requests by plaintiff, picked up and took said iron rods about June 21, 1950; but that defendant did not pay plaintiff for said rods on June 21, 1950, or at any time thereafter, although plaintiff has repeatedly requested payment from the defendant of said $408 due to plaintiff.

"That during the week of May 15, 1950, defendant through its agent, Louis Arnovitz, agreed to buy from plaintiff, and plaintiff agreed to sell to defendant a quantity of aluminum strips, which defendant agreed to pick up within a week after the date of said agreement, and to pay for said aluminum when picked up; that the parties at the time of the making of the contract, made time the essence of the contract; and that defendant failed to perform the said contract and breached the same."

Judge SCHULTZ ordered that the defendant's counterclaim be dismissed upon its merits, and concluded that plaintiff was entitled to recover judgment against the defendant for $408, with interest at five per cent per annum and the taxable costs to plaintiff. Judgment was entered accordingly and defendant appealed to the circuit court.

Upon an appeal to the circuit court, Judge O'NEILL stated:

"The evidence discloses that the parties to this action, on or about May 15, 1950, entered into an oral agreement under the terms and provisions of which the appellant, Industrial Salvage Material Company agreed to purchase from the respondent, Casimir Shy, 13,600 pounds of iron rods at an agreed price of 3 cents a pound, or at a total price of $408, together with 14,000 pounds of aluminum strips at an agreed price of 14 cents a pound. Appellant at the same time agreed with the respondent that the iron rods and aluminum strips were to be picked up by the appellant within a few days and that payment was to be made at the time of delivery or shortly thereafter. The respondent subsequently made a number of calls to the appellant concerning the picking up of the iron rods and aluminum but it was not until June 21, 1950, that the appellant sent its truck to the plaintiff's [respondent's] place of business for the sole purpose of picking up the iron

rods. It is evident from the testimony that the appellant's employees, who were operating the truck of the appellant, had received no instructions to pick up the aluminum strips at the time they were sent to the respondent's place of business for the purpose of the picking up the iron rods. It is also disclosed by credible evidence that there was nothing in the respondent's barns to obstruct the appellant from removing the aluminum. After the removal of the iron rods, the respondent again called the appellant approximately five or six days after June 22d, and as he stated, he continued to call practically every week concerning the aluminum. He had also discussed with the appellant the matter of payment concerning the iron rods. It was testified to by Mr. Ernest Dobbert, an employee of the appellant, that he had called the respondent on three or four occasions concerning the removal of the aluminum. The respondent, on the contrary, denies this and states that he received only one call but that he was ready at all times to deliver the aluminum. It is evident also from the testimony that the appellant did not, however, after numerous calls received from the respondent, send its truck to the place of business of the respondent after June 21st. During the course of the trial respondent testified as follows:

" 'Q. Now did Mr. Arnovitz [appellant's employee] come to your office the first day of July? A. Yes.

" 'Q. And would you tell the court what transpired? A. It was rather late in the afternoon, and Mr. Arnovitz drove up . . . and we talked and I asked him whether he is going to call for the aluminum, whether he is going to take it, well he said, he was going to see, and that he would talk to his man.

" 'Q. Did you ask him for a check for the iron at that time? A. I did.

" 'Q. What did he tell you? A. He said he would send it over.

" 'Q. Now on the 21st day of June, you said they came and picked up the iron? A. That's right.

" 'Q. And did you ask the driver of the truck what his intention was as far as the aluminum is concerned? A. Yes, they didn't know anything about it.' "

The next contact the respondent had with the appellant after July 1st, was on about July 10th, when Arnovitz endeavored to tender to respondent a check in the sum of $1,000 of which $408 was to be applied on the amount due to respondent, by reason of the iron rods which had been picked up by the appellant, and the balance was to be applied on account for the purchase price of the aluminum. The testimony of the witnesses for the appellant, however, is in conflict with that of the respondent, as it related to the date of the tender of the check of $1,000. Appellant's witnesses testified that the date of the attempted tender was July 31st, while appellant himself testified that the tender of the check was made prior to a letter addressed to him under date of July 25, 1950, concerning the aluminum in question.

In summary then, the respondent refused as of July 10th, to sell the aluminum at the agreed May 15th price of 14 cents a pound, but informed Mr. Arnovitz that he was willing to sell at 15 cents a pound. It is apparent from the testimony that both parties were aware of the fluctuating market due to the Korean War.

Civil Court Judge Schultz found that the parties to the contract had considered time to be of the essence of the contract. Judge O'Neill found that no credible evidence supported that finding. There is testimony to the effect that the aluminum was to be picked up by the appellant, along with the iron rods, within a few days after May 15th. The conduct of Casimir Shy in making continued demands upon the appellant both prior and after June 21st, indicated an intent on his part to keep the contract alive, at least up to July 1st. If time was of the essence of the contract when the agreement was made, this particular feature was waived by Casimir Shy. The initial period within which the contract was to be performed had expired. The respondent continued to perform his part of the contract on June 21st by allowing

the delivery of the iron rods. While time was not of the essence of the contract, as a result of the waiver of this feature by respondent's conduct, it was nevertheless incumbent upon appellant to pick up the aluminum within a reasonable time. This, obviously, appellant failed to do. As to what constitutes a reasonable time within the facts of a given case presents a question of fact. *Lang v. Menasha Paper Co.* 119 Wis. 1, 96 N. W. 393; *Lukens I. & S. Co. v. Hartmann-Greiling Co.* 169 Wis. 350, 172 N. W. 894. The findings of the civil judge, in the case at bar, are open to the interpretation that it was the conclusion of the court that the appellant failed to perform within a reasonable time and that the general conduct of the appellant was such as to warrant the respondent in concluding that the appellant had abandoned the contract. Judge O'NEILL stated that he was satisfied that there is credible evidence to support such findings.

By sec. 121.52 (1), Stats., it is provided:

"The seller of goods is deemed to be an unpaid seller within the meaning of this act:
"(a) When the whole of the price has not been paid or tendered."

Although the appellant received the iron rods on June 21st, he made no effort to pay for the same by the testimony of its own witnesses, until July 31st. The contract obviously called for payment upon the delivery of the merchandise, or at least within a reasonable time thereafter. The tendering of payment on July 31st, more than a full month after the contract had been entered into, can hardly be considered to be within a reasonable time. Concerning the matter of payment as being a material element of a contract, the court stated in *Gedanke v. Wisconsin Evaporated Milk Co.* 215 Wis. 370, 254 N. W. 660, at page 376:

"Where payment is thus expressly or impliedly contracted for, payment at the time agreed upon is generally considered

to be a material element of the contract, and the failure of the buyer to comply with the contract in this regard is held to relieve the seller of the obligation to make further deliveries; at least, while the buyer is in default, and where payment is unjustifiably or persistently refused by the buyer, or he is so negligent in the matter as to indicate his intention not to comply strictly with the contract in this regard, the seller is entitled to regard the attitude of the buyer as in effect a repudiation of the contract by him, and he may rescind the contract."

Whether the failure to make the payment pursuant to the terms of the contract is a material breach of the agreement, so as to operate as a discharge of the duty imposed upon the respondent, presented a question of fact for the trial court. *Gedanke v. Wisconsin Evaporated Milk Co., supra.* It is evident from the testimony in the case at bar that the appellant had, without any justification, declined to make payment for the iron rods which he had picked up on June 21, 1950, which placed the appellant in default. It is further evident from the testimony that the appellant made no effort to pick up the aluminum scrap as provided for under the terms of the contract until after such time as the respondent might reasonably believe that the appellant did not intend to perform its part of the contract. The conversation which respondent had with Arnovitz, appellant's employee, on or about July 1st, which is set forth above, could reasonably lead the respondent to believe that appellant had abandoned the contract, or at least that he was totally indifferent toward its performance.

As stated in Restatement, 2 Contracts, p. 750, sec. 397:

"A breach or nonperformance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty."

The evidence in this case supports and fully warrants the trial court's findings that the appellant's failure to make the payment as provided under the terms of the contract, as it relates to the iron rods, coupled with the failure of the appellant to pick up the aluminum within a reasonable time, amounted to such a material breach of the contract as to discharge the respondent from the duty of further performance. The unreasonable delay on the appellant's part in picking up the aluminum scrap warranted the respondent in assuming that the appellant had abandoned the contract. Moreover, the appellant had the burden of showing that he had substantially complied with the terms of the contract. See *Davis-Watkins D. M. Co. v. Cronin D. & I. C. Co.* 186 Wis. 106, 202 N. W. 293; *Grenawalt v. Roe,* 136 Wis. 501, 117 N. W. 1017. The appellant has failed to meet such burden. Furthermore, the appellant has failed to offer any evidence "which establishes any legal excuse" for his failure to so perform. Certainly, the findings of the lower court are not against the clear preponderance of the evidence. The judgment of the civil court is therefore affirmed as ordered and adjudged by the circuit court for Milwaukee county.

*By the Court.*—Judgment affirmed.