Frances B. BLACKMORE, widow of R.B. Blackmore, and Millard Huey, Appellants (Plaintiffs),

v.

DAVIS OIL COMPANY, a Colorado partnership, and Marvin Davis, individually and as general partner, Appellees (Defendants).

No. 83–27.

Supreme Court of Wyoming.

Nov. 4, 1983.

Lubnau & Drew, Gillette, Robert C. Hawley of Dechert, Price & Rhoads, Denver, Colo., Kirk B. Holleyman, Aspen, Colo., for appellants.

Morris R. Massey of Brown, Drew, Apostolos, Massey & Sullivan, Casper, and Erik Carlson, of Davis Oil Company, Denver, Colo., for appellees.

Before ROONEY, C.J., and RAPER,[*] THOMAS, ROSE and BROWN, JJ.

ROSE, Justice.

This appeal concerns the propriety of a summary judgment granted defendants-appellees in a suit for specific performance, accounting and damages arising out of a letter agreement concerning a geologist's prospect.

We will affirm.

_____

[*] Retired June 13, 1983, but continued to participate in the decision of the court in this case

## INTRODUCTION

A prospect is a promoter's assessment of a drilling or mining site which is based on information obtained from observations, tests and other sources. The merit of the prospect depends upon the promoter's skill and the viability of the data he gathers, and it is common practice for a promoter to exchange his work-up for a retained interest in the venture.

## FACTS

In 1963, Marvin Davis, a partner in Davis Oil Company of Denver, Colorado, and R.B. Blackmore, a promoter from Casper, Wyoming, signed a letter agreement which Blackmore required before submitting his oil prospect in the Powder River Basin in Campbell County, Wyoming. Davis then referred Blackmore's work-up to Donald Mettler, the geologist for Davis Oil Company, who, having studied the prospectus, concluded that it was without merit. Mettler told Blackmore that Davis Oil Company was not interested and, save for a later attempt by Blackmore to rekindle interest in the prospect, there was no further communication between them. Mettler left Davis Oil in 1968.

Ten years later, Davis Oil began to acquire leases in the Powder River Basin, all of which were supported by the reports and recommendations of Gordon Heele, then geologist for Davis. Heele's recommendations and reports to Davis were not presented until other extensive development and drilling activity in the Powder River Basin had been accomplished and the data therefrom made available to Heele. The record in this case reveals that Heele did not rely on Blackmore's prospectus in making his geological recommendations to Davis Oil. The leases acquired by Davis Oil Company after 1973 covered a large area which included a small portion of the two townships mentioned in Blackmore's 1963 prospect. Davis

pursuant to order of the court entered June 13, 1983.

drilled and successfully completed several wells within this area.

Blackmore remained active in his business until his death in 1976, but did not claim to have any rights under the 1963 agreement after Davis Oil began to acquire the leases in 1973. Drilling in the precise area mentioned in the letter agreement began in 1977. In March of 1981, Millard Huey, who introduced Blackmore to Davis and to whom Blackmore assigned 25% of his interest in the letter agreement, learned of Davis Oil's productive wells and, in September of that year, asserted an interest in the wells. Davis Oil refused to recognize any obligation to Huey or the Blackmore estate. In July of 1982, Huey and Frances Blackmore (successor to the remaining 75% interest in the letter agreement) brought suit against Davis Oil seeking specific performance of the 1963 agreement, an accounting of the proceeds from the well, and damages. The district court granted defendant's motion for summary judgment.

## THE LAW

The duty of this court on review of summary judgment has often been stated as follows:

" * * * When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record." *Reno Livestock Corporation v. Sun Oil Company* (Delaware), Wyo., 638 P.2d 147, 150 (1981).

The moving party is entitled to summary judgment when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), W.R.C.P.; *Lafferty v. Nickel*, Wyo., 663 P.2d 168 (1983). Furthermore, the party moving for summary judgment has the burden of showing that there is no genuine issue of material fact. *Timmons v. Reed*, Wyo., 569 P.2d 112, 121 (1977). A material fact is one with legal significance which would affect the outcome of litigation. Thus,

" * * * a determination, as to whether or not a fact is material, depends greatly upon the principle of law to be applied." *Timmons v. Reed*, supra, 569 P.2d at 117.

In this contract action, appellees demonstrated to the trial judge that they did not drill on the basis of information provided by Blackmore in 1963 and thereby made a prima facie showing that there was no genuine issue of material fact.

Once the moving party has made a prima facie showing that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to show that a genuine issue of material fact exists which justifies taking the case to trial. *Gennings v. First National Bank at Thermopolis*, Wyo., 654 P.2d 154, 156 (1982). Appellants attempted to discharge this burden by producing the affidavit of a consulting petroleum engineer who merely expressed his opinion to the effect that Davis Oil had undertaken a drilling program utilizing the Blackmore 1963 prospect. However, this conclusory affidavit is inadequate to raise an issue of material fact. This court has often said that under Rule 56(e), W.R.C.P., affidavits on a motion for summary judgment must set forth *specific facts* indicating the presence or absence of a genuine issue of material fact.

"It is incumbent upon the appellant to come forward with not only competent evidence but also specific facts in opposition to those set forth by appellee, as the movant for summary judgment, if there is to remain a genuine issue of fact for

trial." *Gennings v. First National Bank at Thermopolis,* supra, 654 P.2d at 155. See also, *Kimbley v. City of Green River,* Wyo., 663 P.2d 871 (1983); *Hunter v. Farmers Insurance Group,* Wyo., 554 P.2d 1239, 1242 (1976); *Maxted v. Pacific Car & Foundry Company,* Wyo., 527 P.2d 832, 834 (1974); *McClure v. Watson,* Wyo., 490 P.2d 1059, 1062 (1971); *In re Estate of Wilson,* Wyo., 399 P.2d 1008, 1009 (1965).

Our holding in *Lieuallen v. Northern Utilities Company,* Wyo., 368 P.2d 949, 952 (1962), is applicable to the situation which confronts this court in the case at bar. There we said:

"We cannot say that this response met the requirements of Rule 56(e) above noted. It does not set forth specific facts which challenge in any way the truth of defendant's affidavits * * *. Plaintiff's affidavit also fails to develop any specific facts * * *. Thus not even an implication remained * * *."

■ We recognize that it is our appellate duty to consider the record in the light most favorable to the party opposing the motion, *Timmons v. Reed,* supra, 569 P.2d at 116; *Reno Livestock Corporation v. Sun Oil Company* (Delaware), supra, 638 P.2d at 150, and to give him all favorable inferences.

" * * * [W]e look at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from facts contained in affidavits, exhibits, and depositions. *Bluejacket v. Carney,* Wyo., 550 P.2d 494 (1976); *Timmons v. Reed,* supra." *Miller v. Reiman-Wuerth Company,* Wyo., 598 P.2d 20, 24 (1979).

In this case the most that can be said for appellants' position is that, even if the 1963 agreement was binding at the outset, and even if 14 years is a reasonable time for an oil and gas lease agreement to remain operative and viable under an open-ended contract, and even if Blackmore did not waive any interest he may have had by his failure to assert it between 1973 and 1976, then there remains only a possible inference, unsupported by fact, to the effect that Davis' decision to drill was influenced by Black-more's prospect. Appellants would have us hold that, even though they presented no specific facts constituting an issue, the bare inferences in and of themselves—when pitted against the hard testimony of nonreliance which was introduced by Davis—raise a genuine issue of material fact. Specifically, appellants rely upon inferences which say that the letter agreement was a continuing contract, that Davis waited until after Blackmore died to drill the wells in question so as to avoid the agreement, and that Davis in fact used the information obtained from Blackmore in 1963 to support the contention that Davis Oil is liable to them. While the appellants are entitled to all favorable inferences which may be drawn from the material facts, in this appeal they have presented no specific facts upon which such inferences could rest.

We said in *Forbes Co. v. MacNeel,* Wyo., 382 P.2d 56, 57 (1963), that an inference which is contrary to direct testimony is insufficient to support a finding that a genuine issue of material fact exists:

" * * * Plaintiff presented no affidavit which on its face showed defendant to have been negligent but now argues that an inference of negligence was inherent in the diagram attached to the patrolman's affidavit. Nothing therein contained was contradictory of the defendant's answer to interrogatories * * *.

"Inferences contrary to direct testimony are not ordinarily sufficient to support a finding." *Forbes Co. v. MacNeel,* supra, 382 P.2d at 57.

Even if we were to assume that inferences in the appellants' favor might be drawn from the facts presented (an assumption we make only for the sake of discussion), the inferences cannot stand against uncontroverted testimony to the contrary. The Davis witnesses have testified unequivocally that they did not rely upon Blackmore's prospectus in order to make their drilling decisions in the Powder River Basin and there is no testimony in this record which contradicts this evidence. This direct testimony nullifies any asserted inference which

the appellants seek to establish for the purpose of structuring an issue of fact.

■ Appellants in this case have failed to show that there exists a genuine issue of material fact which should have been submitted to the trier of facts. Without a fact question upon the issue of whether Davis utilized the Blackmore information, the appellees are entitled to judgment as a matter of law. Therefore, summary judgment was the correct disposition of the case by the trial court. In fact, as we said in *Reno Livestock Corporation v. Sun Oil Company* (Delaware), supra, 638 P.2d at 151:

"The various aspects of the case before us make it an excellent candidate for summary judgment. The district judge aptly recognized it as such."

Affirmed.

ROONEY, Chief Justice, dissenting.

I disagree with that said in the majority opinion in only two respects:

I

I question the characterization of the affidavit of a consulting petroleum engineer as "merely" expressing his opinion on the question of whether or not the drilling was on the "prospect" of Blackmore. Even if performance by appellees under the contract necessitated the use of Blackmore's geology—an element that is certainly not in the contract as drawn by appellees—expert testimony in the form of an opinion is the only available evidence to counter a bald assertion that the geology was not used. The affidavit set forth the identity of the material upon which the opinion was based and the geology resulting therefrom. The affidavit of Gordon Heele reflects that he conceived the "project" as a stratigraphic one and that Blackmore's geology was a structural one. A "prospect" may be discovered either way. Blackmore's earlier conclusion was verified by Heele, whether or not the same method was used. A summary judgment is not appropriate where expert testimony is required in order to make a finding of fact. *Mealey v. City of Laramie*, Wyo., 472 P.2d 787 (1970), on re-

mand 485 P.2d 1019 (1971), appeal dismissed 404 U.S. 931, 92 S.Ct. 282, 30 L.Ed.2d 245 (1971). Accordingly, a material factual issue is present if the contract is interpreted to require the use of Blackmore's geology as a condition upon which he was to be paid. If it is not so interpreted, the only defense is one of laches—to be discussed infra.

As reflected in the quotation in the majority opinion from *Miller v. Reiman-Wuerth Company*, Wyo., 598 P.2d 20, 24 (1979), appellant is entitled to all favorable inferences to be drawn from the facts. We prefer cases to be determined upon their merits. This one should be.

II

This is a contract action. The requested relief arises from an alleged failure of performance by appellants under the contract. The contract was drafted by appellants and is to be considered most strongly against them. *McGinnis v. General Petroleum Corporation*, Wyo., 385 P.2d 198 (1963). In the absence of overreaching, the court should not aid those who have made an unwise bargain in the formation of a contract. *Matter of Estate of Frederick*, Wyo., 599 P.2d 550 (1979). The contract, dated February 5, 1963, provides:

"Mr. R.B. Blackmore

P.O. Box 1588

Casper, Wyoming

"AREA OF INTEREST: Twp. 42 North, Ranges 75 & 76 West[,] CAMPBELL COUNTY, WYOMING

"Mr. R.B. Blackmore:

"This letter will constitute the written confirmation of our verbal agreement concerning the above captioned Area of Interest.

"If Davis Oil Company elects to drill the prospect within the above described and outlined Area of Interest, then Davis Oil Company agrees to purchase a minimum of 50,000 acres within the outline of the above described Area of Interest, which acreage shall be burdened with a maximum of Five Percent (5%) overriding royalty interest. Where such acreage within

the outline of the above Area of Interest bears less than Five Percent (5%) overriding royalty interest, then and in that event, Davis Oil Company agrees to convey unto R.B. Blackmore, the difference between the existing override and the above stated maximum override of Five Percent (5%).

"If this constitutes your understanding of our agreement, please so indicate in the space provided below and return one copy to us for our files.

"Yours very truly,
DAVIS OIL COMPANY
/s/ Marvin Davis
Marvin Davis
General Partner

"AGREED AND ACCEPTED this February 5th, 1963.

"by /s/ R.B. Blackmore
R.B. Blackmore"

The literal meaning of the contract results in a promise by appellees to purchase 50,000 acres in Township 42 North, Ranges 75 and 76 West, Campbell County, Wyoming, and to pay an overriding royalty interest to Blackmore if appellees "elect to drill the prospect" in such area. Appellees contend for a different meaning inasmuch as the use of the word "prospect" creates an ambiguity in the contract with the resulting problem in this case. Does it recognize the then acceptance of geology so that any drilling thereafter in the area of interest meets the requirement for payment, i.e. the literal meaning, or does it anticipate further examination of the geology from which an election will be made whether or not to drill in the area of interest with payment contingent upon the election being in favor of drilling, i.e. changing the literal meaning? Which was the intent of the parties? Appellants could have used language to clarify the intent. They could have provided that the condition for payment was drilling based *solely* on Blackmore's geology, or based on partial use of such geology. A

time limit for drilling could have been established. It should be remembered that appellees were scriveners of this contract and that it should be considered most strongly against them.

The definition of a "prospect" in the majority opinion is not incorrect. The terms "prospector" (one searching for a suitable place to mine) and "prospect" (superficial indication of a mineral deposit) are well known terms in development of hard minerals. The term "grubstake" (furnishing supplies in return for share of discovered minerals) is likewise a well understood term.

"Prospect" is a term frequently used in various types of oil and gas agreements and which may be defined very broadly or narrowly according to its context.[1]

" ' * * * The term is of course a term of art, and its meaning must be determined from the context in which it is used. Philologically, it is formed from two Latin words "pro", meaning forward or ahead and "spicere" meaning to see or look. There are, of course, many shades of meaning attributed to the term, depending on the frame of reference in which it is applied; but from all of the evidence bearing on its meaning in the oil and gas industry, the literal translation of forward looking or looking to the future seems a quite proper basis on which to build a more technical and more accurate definition.

\* \* \* \* \* \*

" ' * * * [I]n the oil and gas industry, a prospect commences with the determination of the existence of a certain geological structure, conducive to the production of oil and gas underlying a certain area of land. The actual existence of such minerals must then be determined and confirmed by actual drilling and production of said minerals. The continued exploration and drilling of additional wells

---

1. In his deposition, Paul Messinger, one of appellees' geologists, testified:
"Q. [By Mr. Massey] * * * Does the term 'prospect,' as such, have any particular meaning in the industry?

"A. Well, the way it was meant here, it would be a circle drawn and an area outlined, and say in this area buy leases for the prospect."

then determine the extent of the area underlain by the geological structure which originally formed the basis for the drilling of the first well or wells. When by drilling it is ascertained that the limits of the producing geological structure have been reached, then the whole area underlain by that structure becomes a "field". From that, we conclude that a "prospect" contemplates, in its optimum aspect, the creation of a "field".'" *Wurzlow v. Placid Oil Company,* La.App., 279 So.2d 749, 754 (1973).

The meaning to be given to the term in this contract is a forward looking one, the scope of which depends upon the intent of the parties. The primary function of the court in interpreting a contract is to give effect to the intention of the parties. *Busch Development, Inc. v. City of Cheyenne,* Wyo., 645 P.2d 65 (1982); *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463 (1980). When doubt arises from the contract itself as to what the parties meant, there exists a question of intent which the trier of fact must resolve. *Goodwin v. Upper Crust of Wyoming, Inc.,* Wyo., 624 P.2d 1192 (1981); *Goodman v. Kelly,* Wyo., 390 P.2d 244 (1964); *Worland School District v. Bowman,* Wyo., 445 P.2d 364 (1968).

In this case, extrinsic facts considered by the trier of fact may well reflect that the intended use of the word "prospect" precludes recovery by appellants, but a motion for summary judgment is not the vehicle in which a conflict in material facts is properly decided or by which intent is to be determined from reference to conflicting extrinsic matters.

The majority opinion notes the time lapse between the agreement, the drilling, and the claim for royalty payment, and it refers to 14 years as a time which may have been "reasonable" and which may have remained "operative and viable under an open-ended contract" and in which Blackmore may have waived "any interest he may have had." If a contract does not specify the time for performance, a reasonable time is implied, *Zitterkopf v. Roussalis,* Wyo., 546

P.2d 436 (1976); that which is a reasonable time depends upon the circumstances of each case, *Black & Yates v. Negros-Philippine Lumber Co.,* 32 Wyo. 248, 231 P. 398 (1924); and the issue is generally one of fact. *Gill v. Hale & Kilburn Co.,* 257 F. 906 (6th Cir.1919); *Shy v. Industrial Salvage Material Co.,* 264 Wis. 118, 58 N.W.2d 452 (1953). After considering the customs and usages in the oil and gas industry, the time span for developing the area, the interim activity before and after drilling, etc., the fact finder may conclude that a reasonable time for performance had expired in this case. But the issue should not be decided on a motion for summary judgment.

I would reverse and remand.