COURT OF APPEALS
DECISION
DATED AND FILED

September 16, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1234**

STATE OF WISCONSIN

Cir. Ct. No. 2018CV209

IN COURT OF APPEALS
DISTRICT IV

NATHAN BIKOWSKI,

PLAINTIFF-APPELLANT,

V.

PRO SEAMLESS OF WISCONSIN INC.,
F/K/A PRO SEAMLESS,

DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Wood County: TODD P. WOLF, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Nathan Bikowski contracted with Pro Seamless of Wisconsin, Inc. to replace the roof and siding on his residence, and he was unsatisfied with Pro Seamless's performance. Following completion of these projects, Bikowski sued Pro Seamless for breach of contract and trade violation claims and Pro Seamless counterclaimed for unpaid contract amounts. Bikowski appeals the judgment entered by the circuit court following a bench trial. According to Bikowski, the court erred when it determined that he failed to meet his burden of proof on portions of his breach of contract claims, and when it denied relief for Pro Seamless's alleged violations of various trade practices. We reject Bikowski's arguments and affirm.

## BACKGROUND

¶2 This is an appeal of a judgment following a three-day bench trial. The parties disputed many facts during the trial, but the following are undisputed except as noted below.

¶3 Bikowski owns a home in Wisconsin Rapids. In September 2014, following a hailstorm, he entered into two written contracts with Pro Seamless. Both contracts contained a clause that required the work "to be completed in a workmanlike manner according to standard practices."

¶4 One of the contracts was for the installation of a new roof over Bikowski's house and garage. This contract, which we refer to as the "Roofing Agreement," called for the installation of an ice and water shield, a drip edge, and

a continuous ridge vent, and also the replacement of the shingles, roof vents, and flashing. The final price of the Roofing Agreement was $9,150.00.[1]

¶5    The other contract, which we refer to as the "Siding Agreement," called for the installation of vinyl siding, aluminum wrap around all windows and doors, and new soffits and fascia.[2] The contract price of the Siding Agreement was $11,955.00.

¶6    Pro Seamless completed the work on the Roofing Agreement in December 2014 and the work on the Siding Agreement the following spring. Bikowski's fiancée raised issues with Pro Seamless about the quality of its work in March 2015. Pro Seamless submitted a final invoice for both projects on April 8, 2015, and Bikowski's fiancée advised Pro Seamless of additional issues. The parties engaged in the right to cure process found in WIS. STAT. § 895.07 (2019-20),[3] but that process did not result in a resolution of their disputes. Bikowski did not pay the final invoice.

---

[1] The Roofing Agreement originally included repair work on the chimney. Pro Seamless contends that, after determining that the chimney required more than just "repair work" and that Pro Seamless would be unable to do the work, it provided Bikowski with a $1,150 credit so he could have someone else replace the chimney. After this adjustment and another smaller credit, the final price for the Roofing Agreement was reduced from $10,500 to $9,150.00.

On appeal, Bikowski alleges that the so-called chimney repair was a "throw in" designed to induce him to enter into the agreement. We address this allegation in a footnote below. For now, it suffices to say that it is undisputed that Pro Seamless did not perform any work on Bikowski's chimney and did not bill him for any chimney work.

[2] The Siding Agreement also provided for the installation of river rock or vinyl stone in select areas, 36 feet of gutter, and one 15-foot downspout. It is undisputed that the rock or stone was not installed and that Bikowski was not charged for that item. Bikowski did not allege that this resulted in a breach of contract. He did challenge the adequacy of the gutter and downspout at trial, but he makes no argument about it on appeal, and we discuss it no further.

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶7    Bikowski filed a complaint alleging that Pro Seamless breached both contracts and violated various trade practices.[4]    Pro Seamless responded with a counterclaim for $9,274.31, which it claimed represented the unpaid balance due under the two contracts.

¶8    Following a bench trial and the submission of post-trial briefing, the circuit court determined that Pro Seamless breached some but not all of its contractual promises.  It awarded damages based on its determination of whether the work in question could be repaired or had to be replaced.  Specifically, the court found that some of the installation work contemplated by the Roofing Agreement was not done in a workmanlike manner, but that there was no "significant violation[]" of the Roofing Agreement and the minor issues could be easily repaired.  As for the Siding Agreement, the court determined that Pro Seamless did not breach the portions of the Siding Agreement pertaining to the soffits, but that it had breached the portions of the Siding Agreement pertaining to the aluminum wrap and the vinyl siding and that this work had to be replaced.

¶9    As for a remedy, the court determined that Bikowski was entitled to damages for breach of the Siding Agreement in the amount of $7,050.00, which represented the cost to replace the siding and the aluminum wrap.  The court subtracted that amount from the $9,274.31 that Bikowski still owed on the contracts.  It ordered that the difference, $2,224.31, would be held in an attorney trust account and used to pay for the minor repairs that were required under the

---

[4] The complaint also included claims for slander of title and breach of WIS. STAT. § 895.07.  The slander of title claim was dismissed during the trial.  As for the § 895.07 claim, Bikowski does not challenge any aspect of the circuit court's determinations regarding that claim on appeal.

Roofing Agreement, and that any portion of these funds that remained after the repairs were completed would belong to Pro Seamless.

¶10    As for the alleged trade practices violations, the circuit court determined that Pro Seamless had violated some provisions in the Wisconsin Statutes and the Wisconsin Administrative Code that regulate trade practices, but that Bikowski failed to prove that he was entitled to relief for any violation.

¶11    Bikowski appeals.  We present additional background and address the parties' disputes of fact as needed in our discussion below.

## DISCUSSION

¶12    Our standard for reviewing a decision following a bench trial is well established.  We apply a highly deferential standard to the circuit court's findings of fact.  *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶11, 290 Wis. 2d 264, 714 N.W.2d 530.  The circuit court is the ultimate arbiter of witness credibility, and when more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the circuit court.  *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 249-50, 274 N.W.2d 647 (1979).  We will not set aside a fact found by the circuit court unless the record shows it to be clearly erroneous—meaning that, after accepting all credibility determinations made and reasonable inferences drawn by the fact finder, the great weight and clear preponderance of the evidence supports a contrary finding.  *Noll v. Dimiceli's*, *Inc.*, 115 Wis. 2d 641, 643-44, 340 N.W.2d 575 (Ct. App. 1983).

¶13    We review questions of law independently and without deference to the circuit court.  *Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶13.  Interpretation of

statutes and administrative regulations are questions of law. ***Drivers, Salesmen, Warehousemen, Milk Processors, Cannery, Dairy Emps. & Helpers Loc. No. 695 v. LIRC***, 154 Wis. 2d 75, 84, 452 N.W.2d 368 (1990) (statutes); ***Moonlight v. Boyce***, 125 Wis. 2d 298, 303, 372 N.W.2d 479, 483 (Ct. App. 1985) (administrative regulations).

## I. Breach of Contract

¶14    We begin by addressing Bikowski's arguments about the contracts. As stated, the circuit court found that Pro Seamless breached the Siding Agreement with regard to the aluminum wrap and siding, and Pro Seamless does not challenge this determination on appeal. As for the remainder of Bikowski's contract claims, the court found that Pro Seamless had committed only minor breaches of the Roofing Agreement and no breach of the portion of the Siding Agreement that called for replacements of the soffits. The court granted Pro Seamless's counterclaim in part on the same basis.

¶15    Bikowski argues that the circuit court erred by awarding only partial relief on his breach of contract claims, and by partially granting Pro Seamless's counterclaim for the unpaid balance. He contends that the court should have applied the Uniform Dwelling Code when considering Pro Seamless's contract performance, and that the facts demonstrate that Pro Seamless breached the Roofing Agreement in its entirety and the portion of the Siding Agreement that called for the installation of soffits. We address these arguments in turn, concluding that any error on the court's part with regard to the Uniform Dwelling Code is inconsequential, and that the court properly found that Bikowski did not meet his burden of proof regarding the portions of the Roofing Agreement and Siding Agreement for which the court did not find any breach.

## A. The Uniform Dwelling Code

¶16     The Uniform Dwelling Code (UDC), found in WIS. ADMIN. CODE chs. SPS 320-325 (August 2021)[5], is a statewide building code for one- and two-family dwellings.     Various municipalities, including Wisconsin Rapids, have adopted the UDC.

¶17     During trial, the parties disputed whether the UDC's requirements are applicable to the siding and roofing work that Pro Seamless performed on Bikowski's residence, which was originally constructed in 1953.[6]     The circuit court determined that the UDC's requirements were inapplicable because Bikowski's residence was constructed prior to the UDC's effective date. Therefore, the court analyzed Bikowski's breach of contract claims solely under the workmanlike manner and standard practices standard, without considering whether Pro Seamless's work was consistent with the UDC.

¶18     Bikowski contends that the circuit court erred, and that the UDC's requirements apply to Pro Seamless's work.     He appears to be arguing that the

---

[5] All subsequent references to the Wisconsin Administrative Code are to the August 2021 register unless otherwise indicated.

[6] The dispute related to the scope provision of the Uniform Dwelling Code (UDC), which provides that the UDC applies to all one- and two-family dwellings built on or after the effective dates under § SPS 320.03.   WIS. ADMIN. CODE § SPS 320.02(1)(a).   The UDC's effective dates were in 1978 and 1980, long after Bikowski's residence was constructed.   WIS. ADMIN. CODE § SPS 320.03.   However, § SPS 320.02(2)(d) also states that "[a]ny municipality may, by ordinance, adopt the provisions of chs. SPS 320 to 325 to apply to any *additions or alterations* to existing dwellings," (emphasis added), and Wisconsin Rapids expressly adopted by reference SPS chs 320-325 "to all *remodeling* or *alterations* in existing one- and two-family dwellings," Wisconsin Rapids Building Code Section 14.06(2) (emphasis added).   The parties disputed whether the siding and roofing work should be considered an "alteration" covered by the UDC and the Wisconsin Rapids Building Code, or a "repair" that is not covered by the UDC and the Wisconsin Rapids Building Code.   We do not resolve this dispute because, as discussed below, its resolution is not dispositive to any issue on appeal.

court's failure to consider the UDC's requirements made a difference in the outcome of this case. However, after carefully reviewing the record and Bikowski's appellate briefing, we are not persuaded that the court would have reached any different conclusions even if it had considered the UDC's requirements when evaluating Bikowski's breach of contract claims.

¶19 Bikowski generally asserts that Pro Seamless's work was not consistent with the UDC. However, he cites just one specific provision in the UDC, WIS. ADMIN. CODE § SPS 321.28(3)(a)3., that is even arguably pertinent to the issues he raises on appeal. This section specifically pertains to the Roofing Agreement, and it provides that "[s]hingles shall be installed in accordance with manufacturer's recommendations." WIS. ADMIN. CODE § SPS 321.28(3)(a)3.

¶20 The parties vigorously dispute whether Pro Seamless followed the manufacturer's recommendations when installing the shingles. Bikowski argues that the manufacturer's manual recommends "hand-sealing" shingles if installed in fall or winter, and that Pro Seamless did not follow this recommendation.[7] According to Bikowski, "the mere fact that [Pro Seamless] did not hand seal the shingles is a breach." Pro Seamless tacitly acknowledges that it did not hand seal the shingles, but it counters that the manual does not actually require shingles to be hand sealed at the temperatures at which they were installed.

---

[7] More specifically, the manual provides: "All shingles, which contain a factory-applied self-sealing strip, must be subjected to sunlight for several days before full sealing will occur. Shingles installed in fall or winter may not seal until the following spring; consequently, the shingles should be hand-sealed." It further provides: "Shingles which do not receive direct sunlight or which are not exposed to adequate surface temperatures may never seal."

¶21    We need not wade into these evidentiary disputes to conclude that the application of WIS. ADMIN. CODE § SPS 321.28(3)(a)3. would not have altered any of the circuit court's determinations with regard to the Roofing Agreement. This is because proof of damages is one element of a breach of contract claim,[8] and Bikowski did not introduce any evidence that any shingles failed to seal despite the failure to hand seal them.[9]  After hearing the evidence, the circuit court found:  "Nobody found any shingles that weren't properly sealed.  They tested a few of them.  They appeared all to be sealed properly, so I don't find that the plaintiffs have made their burden of proof …."  Bikowski does not make any developed argument that this finding is clearly erroneous.

¶22    For these reasons, we conclude the application of WIS. ADMIN. CODE § SPS 321.28(3)(a)3. would not have changed the circuit court's ultimate determination about the Roofing Agreement.  And Bikowski does not identify any other UDC provision that the court should have considered that might have made a difference in its determinations about the Roofing Agreement or the portion of the Siding Agreement that called for the installation of soffits.[10]  Under these

---

[8] *See Brew City Redev. Grp., LLC v. The Ferchill Grp.*, 2006 WI App 39, ¶11, 289 Wis. 2d 795, 714 N.W.2d 582 (providing that the three elements of a breach of contract claim are (1) a contract between the plaintiff and the defendant; (2) a failure of the defendant to do what it undertook to do; and (3) damages).

[9] Bikowski presented the written report and testimony of an expert who inspected the roof the summer after the shingles were installed.  In his written report, Bikowski's expert acknowledged that "the vast majority of the shingles were sealed down."  The written report did not identify any shingle that was not sealed at the time the inspection occurred, and the expert did not testify that he found any shingles that were unsealed.  Additionally, during his trial testimony, Bikowski's expert acknowledged that there was no evidence of water infiltration through the roof.

[10] Bikowski's expert also identified provisions of the UDC that pertain to the proper installation of a waterproof barrier under the siding.  However, the circuit court found that Pro Seamless breached this portion of the Siding Agreement even without reference to these UDC provisions.  Accordingly, consideration of the UDC would not have changed the court's conclusions about the Siding Agreement.

circumstances, we need not decide whether the circuit court erred when it concluded that the UDC was inapplicable. Any potential error did not alter the outcome of the trial. *See **Milton v. Washburn Cnty.***, 2011 WI App 48, ¶8 n.5, 332 Wis. 2d 319, 797 N.W.2d 924 ("[I]f a circuit court reaches the right result for the wrong reason, we will nevertheless affirm.").

## B. The Roofing Agreement

¶23    Bikowski argues that the circuit court erroneously determined that he had not met his burden to prove that Pro Seamless breached the Roofing Agreement in its entirety. We have already addressed Bikowski's arguments about the shingles, and we now address the remaining issues about the Roofing Agreement.

¶24    The circuit court made the following findings of fact. It found that the drip edge was separating from the roof in two distinct areas, and that the ridge vent was buckling and warped and needed to be reattached to the roof. The court determined that the drip edge and ridge vent had not been installed in a workmanlike manner, but that the problems could be repaired. It noted that both parties had taken an "all or nothing approach" to damages, and that neither party provided estimates of the cost for repairs. As the court explained, given the parties' submissions, "the best way [it could] handle" damages under the Roofing Agreement was to order that the minor repairs would be paid from the $2,224.31 that was otherwise owed to Pro Seamless.

¶25    As we understand his appellate briefing, Bikowski does not appear to challenge the circuit court's determination about the ridge vent. Apart from the shingles, which we have addressed, Bikowski's argument about the Roofing Agreement is focused on the drip edge and the adequacy of the remedy imposed

by the court. Bikowski appears to be arguing that the evidence showed that improper installation of the drip edge created the potential for water infiltration, that it could not be repaired, and that the entire roof must instead be replaced. He contends that Pro Seamless's breach of the Roofing Agreement excuses Bikowski's obligation to pay for any of the roofing work.

¶26 Bikowski's argument is not consistent with our standard of review. Whether Pro Seamless materially breached the Roofing Agreement in its entirety is a question of fact. *See* **Volvo Trucks N. Am. v. DOT**, 2010 WI 15, ¶50 nn.28-29, 323 Wis. 2d 294, 779 N.W.2d 423 (explaining that the determination whether a material breach has occurred is generally a question of fact for the circuit court); *see also* **Shy v. Industrial Salvage Material Co.**, 264 Wis. 118, 125, 58 N.W.2d 452 (1953) (explaining that the issue of whether a party's breach excuses future performance by the non-breaching party presents a question of fact). As stated above, we defer to a circuit court's decision on questions of fact unless clearly erroneous, and the circuit court is the ultimate arbiter of witness credibility. **Cogswell**, 87 Wis. 2d at 249-50.

¶27 Bikowski presents the opinion offered by his expert witness regarding the drip edge as if it were established fact, and he fails to address the expert testimony about proper installation techniques that was provided by a Pro Seamless employee. During the trial, that employee testified that, when installing a square drip edge on the roof of an existing building that has shifted and moved, it sometimes needs to be fastened with a nail to keep it straight, which is what occurred in this case. The employee acknowledges that the drip edge has lifted in a couple places, and he testified that to fix this problem, these places "should be resealed ... and tacked down." The circuit court implicitly credited this opinion and discredited the opinion of Bikowski's expert, who testified that the entire drip

edge would need to be replaced. It is for the fact finder to sort between competing expert opinions, and that is precisely what the court did here. *Adams Outdoor Advert., Ltd. v. City of Madison*, 2006 WI 104, ¶27, 294 Wis. 2d 441, 717 N.W.2d 803 (The "weight and credibility to be given to the opinions of expert witnesses is 'uniquely within the province of the fact finder.'" (quoted source omitted)). We discern no erroneous exercise of discretion.

¶28   Bikowski also argues that the remedy imposed by the circuit court for the roof repairs is inadequate. He contends that the court erred when it "limited" the damages to the remaining balance due on the contract. We disagree. At trial, Bikowski took an all-or-nothing approach, maintaining that the entire roof needed to be replaced. As a result of this approach, he did not provide an estimate of the cost to repair. Under the circumstances, in which the court did not find that the roof needed to be replaced in its entirety and there was no evidence about the cost to repair the minor issues identified by the court, it might have been within the court's discretion to entirely deny recovery for Bikowski. *See Thorp Sales Corp. v. Gyuro Grading Co., Inc.*, 107 Wis. 2d 141, 153, 319 N.W.2d 141 (Ct. App. 1982) (stating that a plaintiff in a breach of contract bears the burden of proving reasonably certain damages). Here, the court instead endeavored to craft a remedy that aimed to address the minor issues that the court found needed to be addressed. Bikowski does not provide any basis for us to disturb the court's reasonable exercise of discretion.[11] *See Cords v. Anderson*, 80 Wis. 2d 525, 552-53, 259 N.W.2d 672 (1977) ("In reviewing damage awards granted in either a

---

[11] Pro Seamless does not appeal the circuit court's decision to set aside $2,224.31 in trust to be used for the repairs that the court found were needed on the roof.

bench or jury trial this court does not substitute its judgment for that of the fact finder, but rather determines whether the award is within reasonable limits.")

## C. The Siding Agreement

¶29    We now address Bikowski's argument about the Siding Agreement. As stated above, the circuit court found that Pro Seamless breached the Siding Agreement with regard to the aluminum wrap and siding, but not with regard to the soffits.

¶30    By way of background, the original soffits were wooden, and the Siding Agreement called for the installation of aluminum soffits.   The Siding Agreement did not state that the original wooden soffits would be removed, but Bikowski's fiancée testified that she asked Pro Seamless to remove them and Pro Seamless agreed.   Bikowski asserts that Pro Seamless's failure to remove the original soffits resulted in airflow being reduced by "fifty percent," consistent with his trial testimony that he observed ice damming for the first time since the soffits were installed.  However, these assertions were not supported by expert testimony. The only evidence of testing was done by Pro Seamless's expert, who testified that he used a wire to verify that the vent in the old soffit had been widened and ultimately determined that the venting met industry standards and was more than adequate.  For his part, Bikowski's expert acknowledged that he had not done any testing to substantiate Bikowski's assertions about airflow and further testified:  "I still to this day do not know whether there is enough sufficient flow at the eaves."

¶31    It is apparent that the circuit court did not credit Bikowski's fiancée's testimony about an oral agreement, and it found "no indication in the [Siding Agreement] that the old soffits would be ... totally removed."   As for

damages, the court further found that Bikowski's assertion that the soffits provided poor ventilation was "pure speculation" that was not "supported by the evidence."

¶32 Apart from asserting that the circuit court should have credited his evidence, Bikowski does not develop any argument explaining how the court erred. The Siding Agreement does not address the removal of the original soffits, and it was within the court's discretion to credit or discredit testimony about an oral agreement. As for damages, the court could reasonably disregard Bikowski's unsubstantiated assertions as speculation. The court's determination that Bikowski failed to meet his burden of proof regarding the soffits is not clearly erroneous.

¶33 For all these reasons, we reject Bikowski's arguments that the circuit court should have found that Pro Seamless materially breached the Roofing Agreement in its entirety and the portion of the Siding Agreement pertaining to the soffits.[12]

## II. Trade Practices

¶34 We now turn to Bikowski's argument about Pro Seamless's trade practices. Bikowski contends that Pro Seamless violated a number of Wisconsin

---

[12] We likewise reject Bikowski's argument, which he barely develops, that the circuit court erred by granting Pro Seamless's counterclaim to recover the balance due for services it performed under the contracts. If Bikowski is now arguing on appeal that he should have been excused from paying the amount due to Pro Seamless because the court found that portions of the two contracts had been breached, we reject the argument because it was not adequately raised in the circuit court. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (explaining that issues not raised in the circuit court may be forfeited and supporting proposition that appellate courts generally do not address forfeited issues). Indeed, in his post-trial submissions to the circuit court, Bikowski expressly advocated for a component-by-component approach to damages for breach of contract.

statutes and code provisions that regulate the home improvement industry, including WIS. STAT. § 101.148(2), WIS. STAT. § 100.65(3), and various provisions in WIS. ADMIN. CODE ch. ATCP 110. We address Bikowski's arguments about these statutes and regulations in turn, ultimately concluding that the court did not err when it declined to grant relief.

## A. WIS. STAT. § 101.148(2)

¶35 Under WIS. STAT. § 101.148(2), a contractor is required to deliver a notice and a brochure concerning construction defects to a consumer before entering into a written contract for remodeling work on a dwelling. During the trial, the parties disputed whether Pro Seamless had timely delivered the notice and brochure to Bikowski. The circuit court found that Pro Seamless violated WIS. STAT. § 101.148(2), but it did not order any damages or any other type of remedy.

¶36 Bikowski does not appear to assert that he suffered any harm as a result of Pro Seamless's failure to deliver the notice and brochure. Although his appellate briefing is not entirely clear on this point, he may be arguing that he is entitled to a "remedial penalty" as a result of the violation. We disagree for two reasons.

¶37 First, Bikowski does not develop any argument that the circuit court has authority to impose a remedial penalty for a violation of WIS. STAT. § 101.148(2). The text of § 101.148 does not specifically provide any penalty for a person's failure to deliver the notice and brochure. The enforcement mechanism for that statute is found in WIS. STAT. § 101.02(13)(a), which provides: "If any … person violates this subchapter, or fails ... to perform any duty specified under this subchapter … for which no penalty has been specifically provided," that person

15

"shall forfeit and pay into the state treasury a sum not less than $10 nor more than $100 for each such offense."[13]   WIS. STAT. § 101.02(13)(a).   Thus, the statute is explicit—any forfeiture should be paid to the state, not to a consumer in a private cause of action.

¶38   Second, we agree with Pro Seamless that Bikowski forfeited any entitlement to a remedial penalty for a violation of WIS. STAT. § 101.148(2). During the circuit court's oral ruling, the court specifically determined that Pro Seamless violated § 101.148(2), but it did not address whether Bikowski was entitled to a remedy for this violation.   After the court was done issuing rulings, it specifically asked:   "[I]s there anything that I am missing that I need to deal with …?"   Bikowski's attorney responded in the negative, stating:   "I think you've covered all of the claims."   He did not raise the issue of any entitlement to a remedial penalty for the violation of § 101.148(2).   We normally do not consider issues that were not raised in the circuit court, and we do not see any reason to do so here.   *See Schill v. Wisconsin Rapids Sch. Dist*., 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (explaining the forfeiture rule).

## B.  WIS. STAT. § 100.65(3)

¶39   Under WIS. STAT. § 100.65(3)(a), residential contractors must furnish certain customers with statements relating to the customers' potential expectations that proceeds from insurance claims will be used to pay for contract

---

[13]  The subchapter referred to in WIS. STAT. § 101.02(13)(a) is titled "REGULATION OF INDUSTRY:  GENERAL PROVISIONS" and consists of WIS. STAT. §§ 101.01-101.599.

work.[14] Additionally, § 100.65(3)(b) requires a residential contractor to provide a form "NOTICE OF CANCELLATION" that the customer can use to cancel the contract if the insurance carrier denies the claim. It appears to be undisputed that Pro Seamless did not provide Bikowski with the statement and form required by WIS. STAT. § 100.65(3) for either contract. The circuit court found that Pro Seamless knew that Bikowski intended to use insurance proceeds to pay for at least a portion of the work, and that Bikowski's insurance company did in fact do so.

¶40     In its oral ruling, the circuit court indicated that it was not "concerned with any violations of [WIS. STAT.] § 100.65" because both parties were already aware of and dealing with Bikowski's insurance company. In essence, the court took no action regarding Pro Seamless's failure to comply with § 100.65(3) because Bikowski suffered no harm—his insurer was already involved, and it was evident to the parties that it would not be denying the claim.

¶41     Bikowski argues that the circuit court misinterpreted the language of WIS. STAT. § 100.65(3), which, Bikowski appears to suggest, mandates that the statement and form be provided regardless of whether the parties are already on notice that an insurer has approved payment of a claim. He points to § 100.65(9), which provides: "Any person who violates this section shall forfeit not less than $500 nor more than $1,000 for each violation." Bikowski contends that the circuit court erred when it failed to award him at least $2,000 in forfeitures—$500 for the

---

[14] Specifically, the statement required by WIS. STAT. § 100.65(3)(a) asks the customer to indicate whether "the work contemplated by this contract is related to a claim under a property insurance policy," and informs the customer, "[y]ou may cancel this contract at any time before midnight on the third business day after you have received written notice from your insurer that the claim has been denied in whole or in part under the property insurance policy."

17

violation of § 100.65(3)(a) and $500 for the violation of § 100.65(3)(b) for each of two contracts—based on "the plain mandate" of § 100.65(9). Pro Seamless counters that it is not clear "who this forfeiture should be paid to," and further, that Bikowski forfeited any entitlement to a forfeiture when his attorney failed to specifically raise the issue at the close of the circuit court's oral ruling.

¶42    To the extent that the circuit court determined that Pro Seamless did not violate WIS. STAT. § 100.65 because Bikowski's insurer was already involved, we would not agree with that analysis. Yet, when a circuit court "reaches the right result for the wrong reason, we will nevertheless affirm." *Milton*, 332 Wis. 2d 319, ¶8 n.5. Here, we conclude that the circuit court nevertheless reached the right result for two reasons.

¶43    First, Bikowski does not develop an argument that he would be entitled to collect the forfeiture provided for in WIS. STAT. § 100.65(9). That statute does not explicitly provide that the consumer may bring a private cause of action to collect such forfeitures. And, as we have seen, "forfeitures" for noncompliance with industry regulations are often paid to the state, not to consumers in a private cause of action. *See supra* ¶37.

¶44    Second, we agree with Pro Seamless that Bikowski forfeited any entitlement to these forfeitures by failing to raise the issue after the circuit court made its oral ruling. As discussed above, the court ruled that there would be no recovery under WIS. STAT. § 100.65(3) because Bikowski did not suffer any harm. The court did not address Bikowski's claim that he was entitled to forfeitures under § 100.65(9). Yet, when the court then asked whether it was missing anything that it needed to deal with, Bikowski's attorney responded in the negative. Bikowski's attorney did not take the opportunity to allow the court to

correct any error it made based on what Bikowski characterizes as the "plain mandate" of § 100.65(9). We conclude that Bikowski forfeited this issue by failing to bring the issue to the attention of the circuit court. *See Schill*, 327 Wis. 2d 572, ¶45 n.21 (one of the policies underlying the forfeiture rule is to give the circuit court notice of any error and a fair opportunity to address it).

### C. WIS. ADMIN. CODE § ATCP 110

¶45 Throughout the trial, Bikowski argued that Pro Seamless violated a number of regulations adopted by the Wisconsin Department of Agriculture, Trade and Consumer Protection in WIS. ADMIN. CODE ch. ATCP 110. These regulations were adopted by the agency pursuant to WIS. STAT. § 100.20(2). *See* ch. ATCP 110 (Note).

¶46 Bikowski argues that he is entitled to double damages and attorney fees pursuant to WIS. STAT. § 100.20(5) and *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶24, 308 Wis. 2d 103, 746 N.W.2d 762. Subsection 100.20(5) provides: "Any person suffering pecuniary loss because of a violation by any other person of … any order issued under this section may sue for damages therefor … and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney fee." In *Stuart*, our supreme court explained that recovery is appropriate under this section when there is a "clear causal connection" between the pecuniary loss and the trade violation. *Stuart*, 308 Wis. 2d 103, ¶24.

¶47 Here, the circuit court appeared to conclude that Bikowski had to prove some kind of deception or misrepresentation to prevail under WIS. STAT. § 100.25(5). In so doing, the court may have misinterpreted the language of the pertinent statutes and administrative regulations, which do not necessarily require

deception or misrepresentation.[15] Under the circumstances, Bikowski argues, the court erred by failing to engage in an analysis of whether there was a causal connection between the alleged violations of WIS. ADMIN. CODE ch. ATCP 110 that he pursued in the post-trial brief and any pecuniary damages he purportedly suffered. We disagree. In this case, despite its possible misinterpretation of the statutory and regulatory requirements, we conclude that the court did not commit reversible error. Bikowski failed to present any evidence or argument that would have shown a causal connection between a violation of ch. ATCP 110 and any pecuniary loss he purportedly suffered.

¶48     During the circuit court proceedings and again in his post-trial brief, Bikowski pointed to sparse and disputed evidence purporting to show that Pro Seamless violated various trade regulations found in WIS. ADMIN. CODE ch. ATCP 110.[16] However, with one exception discussed below, Bikowski did not attempt to

---

[15] The circuit court referenced WIS JI CIVIL 2720, which specifically addresses the provisions of WIS. ADMIN. CODE § ATCP 110.05, most of which involve some kind of deception or misrepresentation. However, Bikowski pursued violations of different sections of ATCP ch. 110, *see infra* note 16, and these sections do not appear to address deception and misrepresentations.

Separately, Bikowski asserts that he did in fact prove that Pro Seamless made misleading representations about performing work on his chimney. First, Bikowski did not develop this argument in the circuit court. Second, he does not cite any specific section of WIS. ADMIN. CODE ch. ATCP 110 on appeal that would entitle him to relief. Third, his argument also fails because, again, Bikowski does not show any causal connection between the alleged misrepresentation and any pecuniary loss. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (we need not consider arguments that are unsupported by adequate factual and legal citations or are otherwise undeveloped).

[16] Specifically, in his post-trial brief to the circuit court, Bikowski argued that he had proven that Pro Seamless violated the following provisions in WIS. ADMIN. CODE ch. ATCP 110: (1) § ATCP 110.04 by failing to timely provide copies of written warranties; (2) § ATCP 110.05(2)(a) by failing to identify the agent who solicited the contract; (3) § ATCP 110.05(2)(b) by failing to adequately describe the roofing and siding works contemplated by the agreements; (4) § ATCP 110.05(2)(d) by failing to provide a start date and end date in the Siding Agreement; (5) § ATCP 110.05(2)(f) by failing to furnish statements of guarantees or warranties;

(continued)

connect any alleged violation to any pecuniary loss. He merely asserted in conclusory fashion that he was entitled to double the contract amounts, which were "the amount[s] necessary to remedy the issues caused by [Pro Seamless's] failure to comply with the [UDC], the manufacturer's installation instructions, and their own practice and policy." As such, the argument Bikowski advanced in the circuit court in favor of double damages appeared to be based on his allegations that Pro Seamless breached the Roofing Agreement and the Siding Agreement—not on his allegation that Pro Seamless violated any provision in ch. ATCP 110.

¶49 Bikowski makes just one attempt to show a causal connection between a violation of WISCONSIN ADMIN. CODE ch. ATCP 110 and a pecuniary loss. That sole attempt pertains to the shingles and fails for reasons we now explain.

¶50 WISCONSIN ADMIN. CODE § ATCP 110.027(1) provides that "[a] seller must give the buyer timely notice of any impending delay in the home improvement contract performance if performance will be delayed beyond a deadline specified in the home improvement contract," and further, that "no change in performance deadlines is effective unless the buyer agrees in writing to the change." Here, the Roofing Agreement specified that the work would be completed in the "fall." Bikowski contends that Pro Seamless delayed the shingle

---

(6) § ATCP 110.05(4) by failing to furnish insurance protections within the agreement; (7) § ATCP 110.05(5) by failing to identify a person performing some of the contract work as an independent contractor; and (8) § ATCP 110.027 by failing to provide written notice regarding a delay in performance on the Roofing Agreement.

We note that the facts pertaining to these violations were vigorously disputed at trial, as were the interpretation and application of the pertinent regulations. The court did not make any specific findings of fact about whether Pro Seamless actually violated any of these regulations.

installation until mid-December without written notice or his agreement, and that "[t]his led to various issues with the roof, i.e., the arcing shingles, all the shingles not sealing, [and] the separation of the ice and water protection." The parties dispute whether there was actually any delay in the contract performance, and whether December is or is not considered part of "fall."

¶51 We need not resolve these disputes because, even if we were to agree that performance was delayed contrary to WIS. ADMIN. CODE § ATCP 110.027(1), Bikowski's assertion that the delay caused him to suffer a pecuniary loss is not supported by evidence in the record. As we have already explained, the circuit court reasonably found that the evidence presented at trial did not establish that the shingles were not sealed. Nor does Bikowski identify any portion of the record showing that any shingles were arcing or suggesting that any delay in shingle installation caused the ice and water protection to separate from the roof in two places. Indeed, Bikowski's own expert specifically testified that the separation was caused by the method by which the drip edge was installed. Bikowski does not connect the issues with the drip edge to any violation of ch. ATCP 110.

¶52 In sum, we reject Bikowski's argument that he is entitled to double damages under WIS. STAT. § 100.20(5).[17]

---

[17] In his appellate brief, Bikowski also argues that the circuit court erred with respect to his post-appeal petition for waiver of fees and costs associated with the appeal. Although Bikowski's petition is in the appellate record, there is no circuit court order in the record that addresses Bikowski's petition. Bikowski did not separately appeal any such order. We question whether we have jurisdiction over any order that was entered following the judgment, and we will not address a ruling that is not reflected within the record. We instead assume that material missing from the record supports the circuit court's decision. *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 27, 496 N.W.2d 226 (Ct. App. 1993).

## CONCLUSION

¶53    For the reasons stated above, we reject Bikowski's arguments and affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.